J-A03025-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER DEVIN BOULDING | : | |
| | : | |
| Appellant | : | No. 751 WDA 2018 |

Appeal from the Judgment of Sentence April 18, 2018
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0001224-2017

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                           FILED APRIL 30, 2019

Appellant, Christopher Devin Boulding, appeals from the aggregate judgment of sentence of three to six years of imprisonment imposed on April 18, 2018, following a jury trial on March 12, 2018.  We affirm.

The trial court summarized the facts of the crime as follows:

The charges in this case arise out of three controlled Suboxone drug transactions between the same cooperating witness, later identified as Terrance Cox.  The first transaction was on June 21, 2016.  The second and third transactions occurred at [Appellant's] residence in New Brighton, Beaver County[,] on June 23, 2016[,] and on July 8, 2016, respectively.  Detective Robert Chamberlain of the Beaver County Drug Task Force was the supervising officer for each transaction.

At trial, the Commonwealth presented the testimony of the supervising officer, Detective Robert Chamberlain;  the cooperating witness, Terrance Cox;  two other members of the Beaver County Drug Task Force;  and a Pennsylvania State Police Chemist, John Wall.  Mr. Cox also testified to a confrontation that he had with [Appellant] at the Beaver County Welfare Office on February 14, 2018[,] where [Appellant] called Mr. Cox as a

_____

*   Retired Senior Judge assigned to the Superior Court.

witness who was testifying against him and then [Appellant] threatened Mr. Cox by saying[,] "Don't make me have to come and kill you."

[Appellant] testified at trial and denied that he sold drugs to Mr. Cox.

* * *

On June 21, 2016, Detective Robert Chamberlain of the Beaver County Drug Task Force met with a cooperating witness (hereinafter "CI") to facilitate a controlled purchase of Suboxone strips from [Appellant]. More specifically, Detective Chamberlain discussed with the CI how the buy would be orchestrated; they strip searched the CI and searched his vehicle to check for money, contraband, and weapons. The officers had the CI place a call to [Appellant's] phone arranging a purchase. Detective Chamberlain then observed the following: [Appellant] threw keys out the window of his apartment down to the CI, the CI then entered the apartment building and went up to [Appellant's] residence. Both the CI and [Appellant] then entered a car in which an unidentified female was waiting and she then drove the CI and [Appellant] to Beaver Falls. [Appellant] exited the vehicle and the CI and the officers witnessed a hand-to-hand exchange with an unknown female from which [Appellant] then returned to the vehicle. The female drove the vehicle back to [Appellant's] residence, where he exited and returned to his residence. The CI returned to the police station, where he gave the police three Suboxone strips in sealed foil-type packaging and the police paid the CI $35 to $40 for the organized buy.

Two days later, on June 23, 2016, Detective Chamberlain facilitated another controlled purchase of Suboxone strips using the same CI. The same procedures and protocol were followed, and officers again observed the CI place the phone call to [Appellant's] phone arranging the purchase. Once arrangements were made, surveillance teams only observed the CI enter the apartment building of [Appellant] but did not personally observe any narcotics transactions. Again, the CI returned to the police station for a debriefing, and officers recovered four Suboxone strips, and then paid the CI for the purchase.

Finally, on July 8, 2016, Detective Chamberlain organized a third controlled purchase using the same CI. On this occasion,

officers again followed the same safety/search preliminary procedures and protocol. The surveillance teams observed a hand-to-hand exchange between the CI and [Appellant,] which took place out in the open on [Appellant's] front porch. The CI returned to the police station, was again searched, and officers recovered four Suboxone strips for which the CI was paid.

Trial Court Opinion, 7/17/18, at unnumbered 2, 3–5 (footnote references to notes of testimony omitted).

A jury convicted Appellant of three counts of Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver, 35 P.S. § 780-113(a)(30), and three counts of Criminal Use of Communication Facility, 18 Pa.C.S. § 7512(a). Trial Court Opinion, 7/17/18, at unnumbered 1. Appellant did not file post-sentence motions. Appellant filed a timely notice of appeal on May 18, 2018. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues in this appeal:

Question 1: Whether the Court of Common Pleas committed reversible error when it sustained the Commonwealth's objection to the question whether the detective leading the criminal investigation into the Appellant's alleged drug sales was aware that the confidential informant he had used had previously been convicted of providing false information to law enforcement by falsely incriminating another person in violation of 18 Pa.C.S. § 4906(a)?

Question 2: Whether the Court of Common Pleas committed reversible error when it granted the Commonwealth's motion to preclude cross-examination of the confidential informant about his prior conviction for providing false information to law enforcement by falsely incriminating another person in violation of 18 Pa.C.S. § 4906(a) based on Rule 609(b)(2) of the Pennsylvania Rules of Evidence even though the Commonwealth had received notice of Appellant's intention to ask that question earlier in the trial?

Appellant's Brief at 6–7.

- 3 -

"It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion." Commonwealth v. Rivera, 983 A.2d 1211, 1228 (Pa. 2009) (citation and quotation marks omitted).

> [T]he Superior Court may reverse an evidentiary ruling only upon a showing that the trial court abused that discretion. Commonwealth v. Laird, 605 Pa. 137, 988 A.2d 618, 636 (2010). A determination that a trial court abused its discretion in making an evidentiary ruling "may not be made 'merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.'" Id. (quoting Commonwealth v. Sherwood, 603 Pa. 92, 982 A.2d 483, 495 (2009)). Further, discretion is abused when the law is either overridden or misapplied. Commonwealth v. Randolph, 582 Pa. 576, 873 A.2d 1277, 1281 (2005).

Commonwealth v. Hoover, 107 A.3d 723, 729 (Pa. 2014).

We address Appellant's issues in tandem, as they are intertwined. Appellant argues that the trial court erred when it sustained the Commonwealth's objection to Appellant's question to Detective Chamberlain whether the detective knew that the CI had been convicted of providing false information to law enforcement when the CI previously falsely incriminated another person in violation of 18 Pa.C.S. § 4906(a) (False reports to law enforcement authorities). Appellant's Brief at 17. That statute provides, in part:

> § 4906. False reports to law enforcement authorities
>
> (a) Falsely incriminating another.--Except as provided in subsection (c), a person who knowingly gives false information to

- 4 -

any law enforcement officer with intent to implicate another commits a misdemeanor of the second degree.

(b) Fictitious reports.--Except as provided in subsection (c), a person commits a misdemeanor of the third degree if he:

(1) reports to law enforcement authorities an offense or other incident within their concern knowing that it did not occur; or

(2) pretends to furnish such authorities with information relating to an offense or incident when he knows he has no information relating to such offense or incident.

18 Pa.C.S. § 4906 (a), (b).

Appellant contends the trial court compounded the error by denying Appellant's questioning of the CI about the prior conviction, although Appellant confusingly maintains that he did not intend to ask the CI about the prior conviction for False Reports. Appellant's Brief at 17, 23. Appellant suggests that the trial court erred, after precluding Appellant from asking Detective Chamberlain about the CI's conviction under 18 Pa.C.S. § 4906(a), in denying Appellant's request to question the CI, accompanied by a cautionary instruction to the jury. Appellant's Brief at 23–24.[1]

_____

[1] Appellant makes an ineffectual and seemingly unrelated argument that the trial court misstated trial testimony when describing the events of June 21, 2016, the date of the first drug buy. Appellant's Brief at 18. Appellant makes a similar argument regarding the trial court's explanation of testimony regarding the drug sale on July 8, 2016. Appellant's Brief at 20–21. It appears that he advances this contention because he asserts, contrary to the trial court, that no member of the drug task force "actually witnessed a 'hand-to-hand' transfer of illegal drugs." Appellant's Brief at 18. Thus, Appellant

The Commonwealth essentially reiterates the trial court's position, discussed infra. In addition, it points out that Appellant "admitted that he did not provide written notice to use the CI's false reports conviction," Commonwealth's Brief at 5. Despite Appellant's denial, the Commonwealth suggests that Appellant was attempting to attack the CI's credibility, and it could have done so through "three retail convictions and two felonies." Id.

The trial court properly prohibited Appellant's use of the CI's prior conviction for False Reports to Law Enforcement during Appellant's cross-examination of Detective Chamberlain. Clearly, Appellant cannot do indirectly what he is precluded from accomplishing directly. We agree with the trial court's representation that Appellant conceded he was unable to use the CI's prior conviction to impeach credibility because it was more than ten years old. Trial Court Opinion, 7/17/18, at unnumbered 3; N.T., 3/9/18, at 71–72 ("I'm not using [the false report] to impeach his credibility. I'm trying to use it to impugn his integrity of the investigation. . . . I'm not able to use it because it's more than 10 years."). The trial court opined that when Appellant posed the question to Detective Chamberlain, the Commonwealth had not yet presented the testimony of the CI. Thus, the Commonwealth objected at that

_____

maintains that "the only person who was in a position to implicate the Appellant in any delivery of a controlled substance was the" CI. Id. at 21. The police described in detail the procedure involved in strip-searching the CI before and after the transactions, and the jury obviously agreed and accepted the extent of the drug task force members' observations.

point, claiming the question properly should be posed to the CI, not the detective. N.T., 3/9/18, at 71. Therefore, the trial court determined the CI's prior conviction "was not 'relevant at this point in trial.'" Trial Court Opinion, 7/17/18, at unnumbered 12 (footnoted omitted); N.T., 3/9/18, at 72.

The trial court explained:

> In this case, an undocumented, 14 year old prior conviction for False Reports, in a case with no evidence of any intervening convictions for the same crime, in a case with no evidence that the cooperating witness was providing false information in this investigation, and, in a case where the cooperating witness was monitored closely from the beginning of each transaction to the conclusion of each transaction, the criminal history of the cooperating witness does not reveal anything about the circumstances of the crime of Delivery of a Controlled Substance and Criminal Use of a Communication Facility. Therefore, that evidence was properly excluded from the evidence at trial for the purpose for which [Appellant] intended to use that evidence: to impugn the integrity of the investigation of Detective Chamberlain into the drug dealing activities of [Appellant].

Trial Court Opinion, 7/17/18, at unnumbered 14. The trial court went on to examine the proper procedure for attempting to impeach the credibility of a witness as set forth in Pa.R.E. 609.[2]

_____

[2] The rule provides, in pertinent part:

> Rule 609. Impeachment by Evidence of a Criminal Conviction
>
> (a) In General. For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, . . . must be admitted if it involved dishonesty or false statement.

- 7 -

By the terms of Pa.R.E. 609 and for the purposes of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or nolo contendere, must be admitted if it involved dishonesty or false statement. Pa.R.E. Rule 609(a). If more than ten years have passed since the witness's conviction or release from confinement for the prior conviction, whichever is later, evidence of that conviction is only admissible if: (1) its probative value substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use. Pa.R.E.[] 609(b).

Trial Court Opinion, 7/17/18, at unnumbered 15 (emphasis added). The trial court also examined the factors set forth in Commonwealth v. Hoover, 107 A.3d 723, 725 (Pa. 2014), stating:

In weighing the probative value versus prejudicial impact of older crimen falsi conviction in this case, the [c]ourt has considered:

1) The degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; 2) the likelihood, in view of the nature and extent of the prior

_____

(b) Limit on Using the Evidence After 10 Years. This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

(1) its probative value substantially outweighs its prejudicial effect; and

(2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609 (a), (b).

record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

Commonwealth v. Hoover, 107 A.3d 723, 725 (Pa. 2014), (quoating [sic] Commonwealth v. Randall, 528 A.2d 1326, 1328 (Pa. 1987).

In this case, factor five (5), the existence of alternative means of attacking the witness'[s] credibility weighs heavy in the [c]ourt's decision to exclude the evidence of the 2003 conviction for False Reports. As summarized above, counsel for [Appellant] impeached the cooperating witness with four prior crimen falsi convictions that were within the ten year look back period. He argued that because the crimen falsi convictions were recent, the implication was that the cooperating witness was not someone who did these things long ago but has long since been rehabilitated. He argued that the cooperating witness was a thief, capable of thievery and willing to lie and steal. Thus, there was other evidence of impeachment of the witness that was aggressively used by counsel for [Appellant].

Trial Court Opinion, 7/17/18, at unnumbered 16. See N.T., 3/9/18, at 144–156 (cross-examination of the CI).

Moreover, Appellant cross-examined Detective Chamberlain regarding potential bias by the CI, as well as the CI himself regarding his other crimen falsi convictions for retail theft. N.T., 3/9/18, at 72; 144. Further, as the trial court held, "There was no notice given to the Commonwealth that [Appellant] intended to cross[-]examine the [CI] with the 14[-]year[-]old False Reports

conviction or, that [Appellant] was to cross[-]examine the Detective with that evidence," a key component of Pa.R.E. 609 (b)(2). Trial Court Opinion, 7/17/18, at unnumbered 15. The trial court proceeded within its discretion and thoughtfully considered and balanced the probative value versus the prejudicial impact of the old crimen falsi conviction and examined the factors set forth in pertinent case law.

We agree with the trial court that in light "of the value of the evidence, the existence of alternative means of attacking the witness'[s] credibility, the prejudicial effect, the time that has passed since the conviction, and Counsel's lack of written notice as required by statute," it was proper to proscribe the jury's consideration of the CI's fourteen-year-old conviction of False Reports. Trial Court Opinion, 7/17/18, at unnumbered 17.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/30/2019